CITY OF NOBLESVILLE *v.* NOBLESVILLE GAS AND IMPROVEMENT COMPANY.

[No. 19,448. Filed June 21, 1901.]

MUNICIPAL CORPORATIONS.—*Natural Gas.*—*Fixing Rates for Consumers.*—*Franchises.*—The act of 1887 (Acts 1887, p. 36) does not confer upon municipal corporations the authority to regulate the prices charged by a natural gas company to its consumers. *pp. 166-168.*

SAME.—*Natural Gas.*—*Franchises.*—*Rates.*—*Acceptance.*—Although a city has no authority under the act of 1887 (Acts 1887, p. 36) to fix the rates for natural gas to consumers, an ordinance passed by a city fixing the rates and accepted by a gas company amounts to a contract and is binding on the company. *pp. 168, 169.*

SAME.—*Natural Gas.*—*Franchises.*—*Rates.*—*Acceptance.*—Where a natural gas company was operating under an ordinance which did not fix the rates to be charged consumers, and afterward accepted

City of Noblesville *v.* Noblesville Gas, etc., Co.

the terms of an ordinance adopted by the city fixing the rates, the company is bound by the latter ordinance, as the legal authorization of a schedule of rates was a sufficient consideration for the accept. ance.  *pp. 169, 170.*

MUNICIPAL CORPORATIONS. — *Natural Gas. — Franchises. — Rates.—* Where a gas company in accepting an ordinance fixing the rates to be charged consumers expressly reserved all vested rights under its franchise, one of the provisions thereof being the right to fix its own prices, within reasonable limits, for gas, such reservation will be held to apply to all uses of gas not specified in the last ordinance. *p. 170.*

INJUNCTION.—*Natural Gas Company.—Municipal Corporations.— Complaint.*—In an action by a gas company, having the right to make reasonable charges for gas to its consumers, to enjoin the enforcement of an ordinance fixing the rate of charges, the complaint was not bad for failing to allege that the prices charged by plaintiff were reasonable.  *p. 170.*

JUDGMENTS.—*Motion to Vacate.*—Where the attorney for a city elected to stand on his demurrer to a complaint in an action against the city and appeal to the Supreme Court, and allowed judgment to be entered thereon, it was not error to overrule a motion to set aside the judgment and permit the city to answer, where it was not shown that any of the city council ever inquired of their attorney about the averments of the complaint, or that the attorney was guilty of fraud or deception.  *pp. 170-172.*

From the Clinton Circuit Court; *J. V. Kent,* Judge.

Action by Noblesville Gas and Improvement Company to enjoin the city of Noblesville from the enforcement of an ordinance regulating the rates to be charged consumers of natural gas.  From a judgment in favor of plaintiff, defendant appeals.  *Affirmed.*

*G. Shirts, W. R. Fertig* and *R. K. Kane,* for appellant.
*F. E. Gavin, T. P. Davis* and *J. L. Gavin,* for appellee.

HADLEY, J.—Suit by appellee for injunction against the enforcement by appellant of its ordinance purporting to regulate the price to be charged by appellee for natural gas in certain cases.  The complaint is in two paragraphs, to which a general demurrer was overruled.  The city elected to stand by its demurrer, and judgment was rendered against it as upon default, in accordance with the prayer of the com-

plaint. Subsequently, but at the same term of court, the city filed its motion, supported by divers affidavits, to set aside the judgment, open the case, and allow it to file an answer, which motion was overruled. These two rulings present the only questions for decision. The complaint discloses that the town of Noblesville, in December, 1886, granted to appellee, a corporation, the right to lay and maintain its gas pipes and mains in the streets and alleys of the town for the purpose of supplying the town and its inhabitants with natural gas upon specified terms. There was no exclusive right, no time limit fixed for the continuance of the license, no restrictions upon the prices that might be charged for gas, and no reservation by the town of any right to revoke or to interfere at a subsequent date with appellee's enjoyment of the franchise. Under this grant appellee dug gas wells and put in its plant at great expense. Subsequently the town was incorporated as a city, and on April 11, 1888, the common council passed an ordinance entitled "An ordinance authorizing corporations, firms, or individuals, to lay and maintain pipes in the streets, alleys, and public grounds of the city of Noblesville for the purpose of supplying said city and its inhabitants with natural gas for heating and illuminating purposes", prescribing in said ordinance a schedule of maximum rates that might be charged for gas in the instances therein specified by any one accepting its provisions. In the schedule prescribed, among other omissions, no rate was fixed, or attempted to be fixed, for furnaces, and bath and water heaters, in residences. The board of directors of the gas company, by resolution duly passed and filed with the common council of the city, accepted the provisions of the ordinance of 1888, upon the express "condition that none of the vested rights of the Noblesville Gas & Improvement Company under former franchises shall be in any manner affected thereby." The schedule of rates prescribed by the ordinance of 1888 was precisely the same rates fixed and charged by the gas company prior thereto, and the same rates

are now being charged. For furnaces, and bath and water heaters in residences, the company has heretofore, and is now, charging for furnaces from $28 to $38.50 per year, according to size of fire pot, running from twenty-two to twenty-eight inches, and for bath and water heaters, each $6 per annum. In January, 1900, the common council of the city pretended to pass another ordinance termed by it as supplemental to, but not in repeal of, the ordinance of 1888, whereby it is attempted to prescribe another schedule of maximum rates chargeable by any corporation, firm, or person, now or hereafter furnishing gas to the inhabitants of the city, among which rates are, for furnaces in residences $2.10 per room per year, kitchen, pantry, halls (except reception halls), and unfinished attics not to be counted, and no charge allowed for grates and other heaters in rooms of houses where furnaces are used; for bath and water heaters $3.50 per annum. This last ordinance appellee refused to accept, and insists upon its right under its grant of 1886 to make its charges as it deems proper in all instances not provided for in the ordinance of 1888. Occupants of houses where furnaces and grates and other heaters are used refuse to pay, and give out in speeches that they will not pay anything for grates and other heaters, and only pay $2.10 per room per year without reference to the amount of gas consumed. And many persons using bath and water heaters give it out in speeches that they are not required to pay and will not pay to exceed $3.50 per year for such heaters; and many others are giving it out that they are not required to pay according to the ordinance of 1888, but according to the ordinance of 1900, and much contention and confusion has arisen between appellee and its customers as to the amount properly chargeable for gas, and by reason thereof many actions have been brought and are now pending in the Hamilton Circuit Court wherein the plaintiffs alleged that appellee is asserting the right to collect rates in excess of what it is entitled to, and injunctions are prayed against appellee

from collecting its just demands, and many other similar suits are threatened and will be brought if not restrained. There was no consideration for the acceptance of the ordinance of 1888, and appellee is not bound thereby. The ordinance of 1900 constitutes a cloud on the franchises and rights of the appellee, and is made the basis by consumers for their contentions that they are not bound by the rates prescribed by the ordinance of 1888, nor by the rates fixed by appellee in cases where the ordinance of 1888 does not prescribe them. To avoid a multiplicity of suits, and to put to rest the many controversies that have arisen between appellee and the consumers of its gas, it is necessary that the court determine their respective rights under the ordinance of 1888 and 1900. Prayer that the ordinance of 1900 be adjudged null, and that appellant be perpetually enjoined from attempting to enforce its provisions against appellee, and that the rights of the parties concerned under the ordinance of 1888 be determined.

The real question presented by the demurrer is the validity of the ordinance of 1900. And the power of the city council to pass it is the only ground upon which it is controverted. Appellant impliedly concedes that to sustain its contention we must overrule the case of *Lewisville Gas Co. v. State, ex rel.*, 135 Ind. 49, 21 L. R. A. 734, and reassert the doctrine discarded in *City of Rushville v. Rushville Gas Co.*, 132 Ind. 575, 15 L. R. A. 321, and this we are earnestly urged to do. The city council attempted, by the ordinance of 1900, to accomplish but a single thing, namely, arbitrarily to regulate the prices chargeable by appellee to its consumers of gas. All are agreed that the power to pass such an ordinance must be drawn from legislative grant, and that the grant has not been made unless it be found within the provision of the act of 1887 (Acts 1887, p. 36), which reads thus: "That the boards of trustees of towns, and the common councils of cities, in this State, shall have power to

provide by ordinance, reasonable regulations for the safe supply, distribution and consumption of natural gas within the respective limits of such towns and cities, and to require persons or companies to whom the privilege of using the streets and alleys of such towns and cities is granted for the supply and distribution of such gas to pay a reasonable license for such franchise and privilege."

It is not doubted that the power contended for by appellant resides in the lawmaking body of the State, and that it may be by such body conferred upon towns and cities. It is, however, no longer an open question that municipal corporations possess only such powers as are conferred upon them by the legislature, either in express terms or by necessary implication, and that when a fair and reasonable doubt exists·as to the existence of power it will be resolved·against the municipality, and the power denied. *Lewisville Gas Co.* v. *State, ex rel.,* 135 Ind. 49, 21 L. R. A. 734, and authorities cited.

It would be doing violence to the rules of statutory construction to hold that under the law of 1887 the power of a city, when not reserved in granting a franchise, to prescribe the prices chargeable by its licensee to consumers of its gas, is free from fair and reasonable doubt. It is insisted that the word "safe" should be construed as qualifying the word "supply" only, and that the words "distribution and consumption" are unqualified, and that the power to make regulations for the distribution and consumption of gas implies the power to regulate in any reasonable way calculated to promote safety, or health, or to protect the people against exorbitant charges. We must have reasons for such construction, and we find nothing in the structure of the statute itself, or in the circumstances and conditions existing at the time of its enactment to warrant the belief that the lawmakers intended any such thing. In addition to the reasons advanced in the Lewisville case it may be added that the people after four more years of experience in the pro-

duction, conveyance, and use of natural gas, and the fuller knowledge of its dangerous· nature, and the traffic in it as an article of commerce, and after having in 1889 (Acts 1889, p. 22, §3) expressly conferred upon towns and cities the power to grant the right to lay pipes through streets and alleys for distribution of natural gas to consumers, through their representatives in 1891, as a further precaution against danger from explosions, prescribed the minimum strength of the transporting pipes (Acts 1891, p. 89), and further-more, at the same session, created the office of natural gas supervisor, and imposed upon that officer the duty of making "personal inspection of all the gas wells of the State", and of seeing "that every precaution is taken to insure the health and safety of workmen engaged in opening gas wells and laying mains and pipes, and of those who, in any manner, use gas for mechanical, manufacturing, domestic or other purposes" (Acts 1891, p. 379, §1), and at the same session, finding it then expedient to confer upon cities of 100,000 population the power contended for by appellant, were able to express their purpose in the clear, apt, words following: "The common council shall have power  *  *  *  to li-cense, tax, regulate and prohibit the supply, distribution and consumption of artificial and natural gas, of water and of electricity, *and to fix the prices thereof.*" Acts 1891, pp. 143, 148.

Since the discovery of natural gas, the protection of the people against the perils incident to its use has been con-spicuously prominent in the legislation upon the subject, but after patient search we are unable to find any language, in any act, that fairly and reasonably imports a purpose of the legislature to interfere with its commercial value, or to confer upon towns and cities of less than 100,000 population the power to do so, and we must therefore hold that no such power exists. It follows that the ordinance of 1900 was *ultra vires* and void.

It is doubtful if we are called upon to decide anything

with respect to the ordinance of 1888. But since it is alleged by appellee that its acceptance of the ordinance of 1888 was without consideration, and imposed upon it no obligation to abide the schedule of rates fixed by that ordinance, and the further averment that controversies have arisen between appellee and its customers as to the force and effect of that ordinance, and a multiplicity of suits threatened, we think it proper to consider the general subject.

The city had the unquestionable right to grant to any person, firm or corporation a franchise to occupy its streets and alleys for conveyance of gas to customers. But it was under no compulsion to convey such right to any one. The subject of grant rested in contract like any other matter. As the price of the right the city was at perfect liberty to demand that the charges for gas furnished the city and its inhabitants should not exceed certain prices. The appellee was at perfect liberty to reject or accept the city's proposal. The terms proposed on the one hand and accepted on the other made a contract as valid and enforceable as if made by two individuals. *City of Indianapolis* v. *Consumers Gas Trust Co.,* 140 Ind. 107, 116; *Western Paving, etc., Co.* v. *Citizens St. R. Co.,* 128 Ind. 525, 531, 25 Am. St. 462.

That the city had no power to regulate the rates of its licensee makes no difference. It had the power to contract. And the power to regulate as a governmental function, and the power to contract for the same end, are quite different things. One requires the consent only of the one body, the other the consent of two. In this instance the city acted in the exercise of its power to contract, and it is therefore entitled to the benefits of its bargain.

There is no merit in appellee's contention that the ordinance contract of 1888 fails for want of consideration. Appellee's original franchise of 1886 was without restriction as to rates; and it could have continued to enjoy its franchise, and fix its own rates (if reasonable) if it had chosen to do so. By the ordinance of 1888 the city in effect proposed

that any person, firm, or corporation, including appellee, desiring the use of its streets and alleys as a means of marketing natural gas, might have the same, by undertaking to abide by and perform all the conditions set forth, including the limitation upon prices for gas.  Appellee was not required to accept the new proposition.  It might have gone on without a contract for chargeable rates, and taken its chances of legal interference, or it might free itself of uncertainty by accepting the certainty of contract.  It chose the latter course, accepted the ordinance, and for the first time had a contract and a legal authorization to charge the prices specified in the ordinance contract.  This was a sufficient consideration.

But in its acceptance of the ordinance of 1888 appellee expressly reserved all vested rights under its franchise of 1886. One of these rights was to fix its own prices, within reasonable limits, for gas, and must be held to apply to all instances and uses of gas not specified in the ordinance of 1888; that is to say, under the facts shown, for all service, instances, and classes specified in the 1888 ordinance, appellee is not entitled to charge in excess of the rates fixed by that schedule, and for all service and uses of gas not specified in the ordinance of 1888 appellee is entitled to charge a reasonable price.

It is asserted by appellant that the complaint is bad, and exhibits no equity, for failure to aver that the prices charged by appellee for gas, not ruled by the ordinance of 1888, are reasonable.  In the absence of any showing to the contrary, we must presume that they are reasonable.

Final judgment was entered on March 12, 1900, and on April 12, 1900, but at the same term, appellant filed its motion, supported by affidavits, to set aside the judgment, and for leave to file its answer.  It is claimed that there was an abuse of discretion in the overruling of this motion.  It appears that the complaint was filed January 6, 1900.  On January 17th appellant, after having been duly summoned

to answer the complaint, filed its demurrer thereto. The venue was then changed to the Clinton Circuit Court. A day was fixed in the latter court for argument on the demurrer. The regular attorney for the city and the attorneys for appellee went from Noblesville to Frankfort on the day fixed, and argued the demurrer, at the conclusion of which argument the court announced that he was inclined to overrule the demurrer, but would reserve his decision for further consideration, and would advise the attorneys interested when he was ready to rule. Whereupon the attorney for appellant announced that if the decision was adverse to the defendant it would stand by its demurrer and appeal to the Supreme Court. When ready, the judge gave the attorneys four or five days' notice of the time when he would give a decision upon the demurrer, indicating therein what the decision would be, and in response to which notice appellant's said attorney wrote the court to the effect that in view of its determination it would be unnecessary for him to be present, and requested the court to note an exception and show the granting of an appeal,—which was done.

This is an application to be relieved from a judgment, and to authorize the relief it is incumbent upon appellant to show that the judgment was taken against it through its mistake, inadvertence, surprise, or excusable neglect. §399 Burns 1894, §396 R. S. 1881 and Horner 1897. There is no effort made to justify the vacation of the judgment further than to show that the city's attorney, entrusted with the defense, failed to inform the council of the specific averments of the complaint, and that it had no knowledge of such averments, and the attorney's act in allowing judgment to go on demurrer was unauthorized and unknown to the city.

It is not shown that any of the city council ever inquired of their attorney about the averments of the complaint, or that the attorney was guilty of any fraud, or deception. It is, however, shown that the motion to set aside was signed and presented by other attorneys who were probably em-

ployed in the case after the rendition of the judgment. There is no doubt, expressed or intimated, but that the city attorney, in all that he did with respect to the case, acted in good faith and in accordance with his best judgment; that other lawyers may differ with him as to the propriety of filing an answer and making a defense affords no ground for opening the case, as the question must be determined by the trial judge from the facts entering into and surrounding the case at the time of the rendition of the judgment. There was abundant time for the consideration of all questions of law and fact presented by the complaint. Every one is bound to vindicate his rights in due season, and to know at his peril the soundness and extent of his defense. The law allows him to make as many separate defenses as he chooses, but requires him to present them when his rights are assailed in a judicial proceeding, or be forever precluded. *Center Tp.* v. *Board, etc.,* 110 Ind. 579, 589; *Adams School Tp.* v. *Irwin,* 150 Ind. 12.

The court did not abuse its discretion in overruling the motion. Judgment affirmed.