INDIANA EDUCATION EMPLOYMENT RELATIONS BOARD, FRANKLIN K. DEWALD, INDIVIDUALLY AND IN HIS CAPACITY AS CHAIRMAN OF THE INDIANA EDUCATION EMPLOYMENT RELATIONS BOARD, CLEON FOUST AND GEORGE D. GARDNER, INDIVIDUALLY AND IN THEIR CAPACITY AS MEMBERS OF THE INDIANA EDUCATION EMPLOYMENT RELATIONS BOARD, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO *v.* BENTON COMMUNITY SCHOOL CORPORATION.

(No. 776S203. Filed July 12, 1977. Rehearing denied September 27, 1977.)

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellant Indiana Education Employment Relations Board, *Wendy L. Kahn, Swerdling and Mauer,* of Washington, D.C., *Richard J. Darko, Bingham, Summers, Welsh & Spilman,* of Indianapolis, for appellant American Federation of State, County and Municipal Employees, AFL-CIO.

*Alan H. Lobley, Alan T. Nolan, Martha S. West, Ice Miller Donadio & Ryan,* of Indianapolis, for appellee.

PRENTICE, J.—This is an appeal from the determination of the trial court that Public Law 254, Acts of 1975 (Ind. Code § 22-6-4-1 *et seq.* is unconstitutional as violative of Article I, Section 12 of our state constitution, in that it prohibits judicial review of an administrative agency's determination.

Three issues are presented, for our determination, by briefs of Appellant and Appellant-Intervenor.

(1) Did the trial court err, as a matter of law, in ruling upon the constitutionality of the statute, in the absence of a justiciable controversy?

(2) Did the trial court err, as a matter of law in holding that the challenged sections precluded judicial review of administrative agency determination made with respect to representation proceedings held under Section 7 of the Act?

(3) Did the trial court err, as a matter of law, in ruling that the challenged sections are not severable from the remainder of the Act, thus rendering the entire Act unconstitutional?

Public Law 254, Acts of 1975 (Ind. Code § 22-6-4-1 through 22-6-4-13) provides for collective bargaining between public employees and their governmental employer. The defendant (appellant), Indiana Education Employment Relations Board, (Board) is the state agency charged under the Act with its administration.

Plaintiff (Appellee), Benton Community School Corporation filed a complaint for declaratory judgment, a temporary restraining order and preliminary and permanent injunctions, all relative to the enforcement of Public Law 254, which it charged is unconstitutional under Article I, Section 12 of the Constitution of Indiana. Said action by the plaintiff was instituted following its receipt from the defendant (Board) of a notice of hearing upon a representation petition theretofore filed with the Board by the Retail Clerk's Union, Local No. 25. Local No. 25 had previously filed the petition with the Board,

seeking to be certified as the exclusive representative of said employees; and the purpose of the hearing was to determine an "appropriate unit" of the plaintiff's employees, for purposes of collective bragaining under the Act, and to determine if a question existed as to the exclusive representative of such unit.

A temporary restraining order was issued, restraining the Board from proceeding with said hearing, and notice issued for hearing upon plaintiff's application for a temporary injunction. Thereafter, the hearing upon the application for a temporary injunction was continued and consolidated with the hearing upon the merits; The American Federation of State, County and Municipal Employees, AFL-CIO (Intervenor) was allowed to intervene, stipulations of fact were filed and the cause put at issue by motions for judgment filed by the Board and by the intervenor.

The trial court overruled said motions to dismiss, declared the entire Act unconstitutional in that subsections 8(d), (g) and (i) thereof were not severable from the remainder of the Act and prohibited judicial review of state administrative agency determinations made in regard to representation proceedings held under Section 7 of the Act. Accordingly, the Board was permanently enjoined from further proceedings under the Act.

## ISSUE I

Intervenor challenges the jurisdiction of the trial court and asserts that the Board's actions neither injured Plaintiff nor threatened it with injury sufficient to pose a justiciable controversy regarding the constitutionality of the Act.

It is true, as argued by Intervenor that courts do not pass on the constitutionality of a statute until a constitutional determination is necessarily and directly involved in a justiciable controversy and is essential to the protection of the rights of the parties concerned. *Bush* v. *Texas,* (1963) 372 U.S. 586, 83 S.Ct. 922, 9 L.Ed.2d 958; *Roth*

v. *Local Union No. 1460 of Retail Clerks Union*, (1939) 216 Ind. 363, 24 N.E.2d 280. A constitutional question will not be anticipated in advance of the necessity of deciding the constitutional issue. *Poer, Trustee* v. *State, ex rel.*, (1918) 188 Ind. 55, 121 N.E. 83; *N. Y. Cent. R. R. Co.* v. *Pub. Ser. Comm. of Ind.*, (1958) 237 Ind. 544, 147 N.E.2d 547.

Contrary to Intervenor's argument, we believe that a determination of the constitutionality of the Act was necessarily and directly involved in this controversy and was essential to the protection of the rights of the plaintiff. As the facts show, a hearing on the determination of an appropriate bargaining unit among Plaintiff's employees was scheduled by the Board. Without injunctive relief, Plaintiff would have been forced to proceed with such hearing from which, according to the Act, there would have been no judicial review available. Plaintiff was clearly threatened with a legal injury and should not have been forced to proceed under an unconstitutional statute at its peril. This case presents not merely the "ripening seeds" of a controversy, but presents an already existing and actual controversy.

This action was brought in part under the Indiana Declaratory Judgment Act, Ind. Code § 34-4-10-2, which provides:

"Any person * * * whose rights, status, or other legal relations are affected by a statute * * * may have determined any question or construction or validity arising under the * * * statute, * * * and obtain a declaration of rights, status or other legal relations thereunder." Ind. Code § 34-4-10-2 (1971).

The Act further provides in Ind. Code § 34-4-10-12:

"This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

The judicial doctrines of justiciability and standing exist to insure that litigation will be actively and vigorously con-

tested, thus eliminating the possibility of collusion or attempts to obtain advisory opinions. As exemplified by the record below and the briefs on appeal, this case has been vigorously contested by both sides and by the intervenor. The plaintiff was not merely seeking an advisory opinion and the decision has an immediate impact upon the rights and obligations of all parties.

The criteria for standing under the Declaratory Judgment Act was stated in *Zoercher* v. *Agler*, (1930) 202 Ind. 214, 221, 172 N.E. 186, 189, as quoted in *City of Mishawaka* v. *Mohney*, (1973) 156 Ind. App. 668, 297 N.E.2d 858:

> " '[T]he person bringing the action must have a substantial present interest in the relief sought, such as there must exist not merely a theoretical question or controversy but a real or actual controversy, or at least the ripening seeds of such a controversy, and that a question has arisen affecting such right which ought to be decided in order to safeguard such right.' " 156 Ind. App. 668 at 672

In *City of Mishawaka* v. *Mohney, supra,* the city was seeking a declaratory judgment that one of its own ordinances was constitutional. The court properly held that the city lacked standing for such an action in that no actual controversy involving the implementation of the ordinance had arisen. The city was seeking a purely advisory opinion.

In contrast, in *Jacob Weinberg News Agency* v. *City of Marion*, (1975) 163 Ind. App. 181, 322 N.E.2d 730, the court held that the plaintiff had standing to bring a declaratory judgment action seeking to declare a city ordinance unconstitutional. There, the plaintiff was a news distributor challenging a city ordinance on pornography. Although he was not liable under the ordinance, his federal first amendment rights of distribution of literature were threatened. The court held that the plaintiff had standing to argue his own claim that his constitutional rights were being infringed.

Intervenor also cites *Committee for Prevailing Wage Scale* v. *Zeller*, (1965) 140 Ind. App. 478, 208 N.E.2d 697, where

the court held that the controversy was moot by the time the trial in the case was held. Plaintiffs were challenging the method of setting a wage scale on a school construction project. By the time of trial the construction project had been completed and all wages in question paid. The court concluded that if previously there had been any justiciable question, there remained no question at trial to litigate and any previous question was moot. However, in discussing the necessity of having an actual controversy to litigate, the court quoted:

> " ' * * * It is hardly possible to measure completely the social advantage accruing from the opportunity to secure a conclusive adjudication upon contested official action before rather than after it is undertaken. The conditions of justiciability are naturally demanded, to avoid any question of rendering merely advisory opinions. * * * ' " 140 Ind. App. at 489, 208 N.E.2d at 704.

The case before us involved an immediate existing controversy between the parties and illustrates the need and desirability of adjudicating the parties' constitutional rights before rather than after official action has been taken.

Intervenor further argues that Plaintiff could have raised the constitutionality of the Act at some later point in the contested proceedings. That Plaintiff could possibly have done so, however, has no bearing upon its standing to bring the present declaratory judgment action. Moreover, if Plaintiff had proceeded with the unit determination hearing, it would have been faced with the uncertainty of determining whether or not to seek a judicial review of the unit determination immediately after the hearing, only to be told that the unit determination was not a final order of the administrative agency, or whether to wait until after an election had been held to seek review. If Plaintiff had been required to recognize a union without an election based upon authorization cards, it would have had to decide whether to seek review upon recognition or upon certification by the board of an

exclusive representative, or whether to wait and seek review only after an unfair labor practice determination.

We know of no principle requiring a party who deems himself assaulted by a statute, believed to be unconstitutional, to defer such challenge until he has been battered and to decry the validity of his adversary's constitutional authority only with his dying breath. Accordingly, we see no prematurity in the plaintiff's action.

## ISSUE II

The Act in question was enacted by the Indiana General Assembly in 1975 to govern the organization of employees in the public sector for purposes of collective bargaining.[1] The administrative agency charged with carrying out these purposes and procedures is the Indiana Education Employment Relations Board (hereinafter referred to as IEERB or the Board).

Under the Act, the Board is empowered not only to adjudicate labor disputes between public employers and their employees but also to determine the composition of the unit of such employees, with which the employer is to bargain, and the identity of such unit's bargaining agent.

Section 7 of the Act deals with the determination by the Board of the unit of employees to be represented and the employees' organization to represent it; and section 8 deals with its resolution of labor disputes. Subsection (g) of section 8 specifically provides that any person aggrieved by a *final* order of the Board may obtain a judicial review. However the determination and certification of an employee's organization as the employee's representative are expressly excluded from the purview of judicial review by subsection (d) and a further provision of subsection (i) prohibits the

---

1. Public Law 254 applies to all public employees, except policemen, firemen, professional engineers, faculty members of any university, certificated employees of school corporations, confidential employees, or municipal or county health care institution employees, § 22-6-4-1(c) (1975). Public school teachers may organize under Public Law 217, Ind. Code § 20-7.5-1, enacted in 1973.

inclusion, in the Board's transcript of the record, the evidence introduced during the representation proceedings and enjoins a judicial review of such proceedings.

The Board (Appellant) asserts that the aforementioned subsections do not preclude judicial review of representation questions but merely excludes them from such review in the manner provided by section 8 for the review of determinations of labor disputes. It is its position that such representation questions are, nevertheless subject to judicial review in the same manner as other administrative agency actions are reviewable, i.e. under the terms of the Administrative Adjudication Act, Ind. Code § 4-22-1-14. In this posture, questions of representation would be determined by the Board (IEERB) and subject to judicial review under the Administrative Adjudication Act, but a special review procedure provided by section 8 would be applicable to the Board's determination of complaints of unfair labor practices.

It is our opinion that such was not the legislative intent.

The Act was derived in large part from the federal National Relations Act (NLRA), 29 U.S.C. § 141 *et seq.* In order to understand the provisions of the Act it is helpful to compare them with similar provisions of the NLRA. Under both the NLRA and the Act, a labor union first petitions the Board, either the National Labor Relations Board (NLRB) or the IEERB, to be certified as the exclusive bargaining representative for the employees in a designated unit. The Board then proceeds to determine through a hearing whether the unit sought to be represented is an appropriate unit. Once an appropriate unit is determined, the Board then decides whether a question of representation exists within that unit. Ind. Code § 22-6-4-7(a). Under the NLRA if the NLRB finds that a question of representation exists, it *must* conduct an election, in the absence of any unfair labor practices. Under Public Law 254, IEERB is not required to hold an election, but may require an employer to recognize an exclusive representative solely on the basis of IEERB's check of union authorization cards. Ind. Code § 22-6-4-7(b).

If an election is held under the NLRA or Public Law 254, the Board then certifies the results. If the union loses the election, the unit determination made previously by the Board becomes a moot issue. If the union wins the election, upon certification by the Board, the employer is under an obligation to bargain with the certified exclusive representative, which obligation is enforceable through the unfair labor practice complaint procedure.

Under the NLRA if an employer wishes to contest the unit determination made by the NLRB prior to the election, the employer must refuse to bargain, thereby forcing the union to file an unfair labor practice charge; and the employer may then seek judicial review of the resulting unfair labor practice determination. The unfair labor practices specified in § 5 of the Act, Ind. Code § 22-6-4-5, closely follow those set forth in 29 U.S.C. § 158 of the NLRA. Under this Act, refusal to bargain after certification is an unfair labor practice even in the event no election has been held among the employees. Ind. Code § 22-6-4-5 (a). Upon the filing of an unfair labor practice complaint, the NLRB or IEERB holds a hearing to determine the charge raised by the complaint. Ind. Code § 22-6-4-8. If warranted, IEERB may then issue a cease and desist order against an employer for a refusal to bargain. The IEERB or the "complaining party" may seek judicial review or enforcement of a cease and desist order under section 8 (d) of the Act. Any aggrieved person, including the employer, may seek judicial review of any "final" order of IEERB under § 8 (g) of the Act. The NLRA sets forth similar procedures for judicial review of such unfair labor practice determinations in 29 U.S.C. § 160.

Contrary to the NLRA, the Act attempts to prohibit judicial review of IEERB's unit determinations and certifications of exclusive representatives by the following language contained in the judicial review provisions of § 8, "Prevention of Unfair Labor Practices," Ind. Code § 22-6-4-8:

"* * *

(d) * * * Provided, however, that the determination by

the board that an employee organization has been chosen by a majority of the employees in an appropriate unit may not be subject to review by the court.

\* \* \*

(g) \* \* \* the certification by the board that an employees' organization is the exclusive representative shall not be subject to review by the court.

\* \* \*

(i) In any proceeding for enforcement or review of a board order held pursuant to section 8(d) or (g) of this chapter, evidence introduced during the representation proceeding pursuant to section 7 of this chapter [on representation and collective bargaining units] shall not be included in the transcript of the record required to be filed under subsection 8(d) and (g); nor shall the court consider the record of such proceeding."

Absent these prohibitions on judicial review, the Board's unit determinations and representative certifications would be judicially reviewable as one aspect of the review of unfair labor practice determinations made by the Board. Under federal labor law, which has identical procedures except for the above quoted provisions,[2] a unit determination or representative certification is not a "final" administrative agency order and thereby reviewable by a court until after the following steps have been completed: (1) an NLRB representation election has been held, (2) the union has won the election, (3) the results have been certified, (4) the employer

---

2. Except for the prohibitions on review of representation proceedings, the judicial review provisions of Public Law 254 closely parallel those found in the NLRA. Subsections 8(d), (e), and (f) of Public Law 254 repeat in substantial part the language of 29 U.S.C. § 160(e). The language contained in § 8(g) is taken directly from 29 U.S.C. § 160(f):

"Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of that order in [circuit or superior court] . . . ."

The language of § 8(i) parallels 29 U.S.C. § 159(d), except that the Indiana provision prohibits what the NLRA requires. Section 159(d) of the NLRA provides that the record of unit determination and certification proceedings *shall* be included in the transcript filed when seeking review of an unfair labor practice determination, whereas § 8(i) of Public Law 254 specifies that any evidence introduced during representation proceedings *shall not* be included in the transcript required to be filed for judicial review purposes.

has refused to bargain in order to seek judicial review, (5) the union has filed an unfair labor practice charge, and (6) the NLRB has consequently found the employer to have committed an unfair labor practice. Only then may the employer seek judicial review, not only of the unfair labor practice determination, but of any previous Board orders, including the unit determination and representative certification. 29 U.S.C. §§ 159(d), 160(f) (1973).

This interpretation of the NLRB was made by the United States Supreme Court in *American Federation of Labor* v. *National Labor Relations Board*, (1940) 308 U.S. 401. In interpreting the NLRA, the Supreme Court reviewed the legislative history of the Act and found that one of the purposes of the Act was to correct certain weaknesses under prior federal labor law. Prior to the passage of the NLRA:

"[A]ny attempt by the Government to conduct an election of representatives may be contested ab initio in the courts, although such election is in reality merely a preliminary determination of fact. This means that the Government can be delayed indefinitely before it takes the first step toward industrial peace. After almost a year not a single case, in which a company has chosen to contest an election order of the Board, has reached decision in any circuit court of appeals." 308 U.S. at 410. f.n. 2, quoting Sen. Rep. No. 573, Committee on Education and Labor, 74th Congress, 1st session pp. 5, 6.

"There is no more reason for a court review prior to an election than for a court review prior to a hearing. But if subsequently the Board makes an order predicated upon the election, such as an order to bargain collectively with elected representatives, then the entire election procedure becomes part of the record upon which the order of the Board is based, and is fully reviewable by an aggrieved party in the federal courts in the manner provided in [29 U.S.C. § 160]. And this review would include within its scope that action of the Board in determining the appropriate unit for purposes of the election. This provides a complete guarantee against arbitrary action by the Board." 308 U.S. at 411, f.n. 3, quoting from Sen. Rep. No. 573, Committee on Education and Labor, 74th Congress 1st session p. 14.

"[The National Labor Relations Act] provides for review in the courts only after the election has been held and the

Board has ordered the employer to do something predicated upon the results of an election." 308 U.S. at 411, quoting 79th Congress, Rec. 7658.

The NLRA was the model the Indiana Legislature used in drafting the Act. The Legislature is presumed to have known that under the NLRA an employer could not obtain review of any intervening Board orders until after the finding of an unfair labor practice. But it made a perplexing change with regard to the procedure for judicial review. It specifically prohibited review of representation questions upon review of an unfair labor practice charge. Because of the otherwise identical procedures of the Act and the NLRA, it is apparent that the Legislature believed that if it prohibited review of representation proceedings as a part of the unfair labor practice procedure, no judicial review of § 7 proceedings would be available under any circumstances.

The arguments made by the Board, calling for judicial review under the Administrative Adjudication Act, Ind. Code § 4-22-1-1 *et seq.* (1971), would create the precise situation sought to be avoided by the National Labor Relations Act as explained in *American Federation of Labor* v. *NLRB, supra.* Under this interpretation, unit determinations and representative certifications would be reviewable before any election was held and before an employer was ordered to bargain based upon the results of that election. The purpose of the Act, i.e. the prevention of unfair labor practice through expeditious resolution of disputes would be greatly impaired if this interpretation were to be adopted by this Court.

Leaving aside the derivation of the Act from the NLRA, a major flaw in defendant IEERB's argument on the availability of the Administrative Adjudication Act for judicial review of unit determinations and representative certifications is that § 7 representation decisions are not "final" administrative orders. Such preliminary, interim agency determinations are not ripe for judicial review. Defendant asserts in its Brief that § 7 representation determinations are final orders, but such is not the case.

The requirement of finality is discussed in *Downing* v. *Board of Zoning Appeals of Whitley County*, (1971) 149 Ind. App. 687, 274 N.E. 2d 542. The court in *Downing* found no Indiana authority on the concept of finality and, therefore, relied on federal law. The courts are reluctant to review interim administrative steps, which are not or have not become final, because such review only delays the administrative process, rendering agency authority ineffectual. The court defined "final" as an order which ends the proceedings, leaving nothing further to be accomplished by the agency. An order is not final if the rights of the party involved remain undetermined or if the matter before the agency is retained for further action. To be final, an administrative decision must impose an obligation upon a party to the proceeding as a consummation of the administrative process. 149 Ind. App. at 691, 274 N.E. 2d 545. Thus, preliminary or procedural orders are not reviewable within the general language of the Administrative Adjudication Act.

Under the principles set forth in *Downing,* representation decisions and certifications of the Board under § 7 of the Act are interim procedural orders. When a question of representation in an appropriate unit is found to exist and an election is ordered after such hearing, the unit determination becomes a moot issue if the union loses the election and no judicial review of the unit determination is necessary. Review of such preliminary orders would result in piecemeal review, contrary to the intent and purpose of the Administrative Adjudication Act.

A certification of an exclusive representative after an election is not a final agency order. Upon certification of a representative by the Board, an employer has a duty to bargain with that representative, but the Board certification itself is not an order to bargain. The certification itself does not require any action to be taken by any party. Before the Board can issue an order requiring any affirmative action by an employer, the employer must refuse to

bargain and subsequently be found guilty of an unfair labor practice. Only then can the Board order an employer to cease and desist from refusing to bargain. Only at this point is an obligation imposed upon the employer as a consummation of the administrative process.

Additionally, as set forth in the trial court's findings and conclusions:

"Any order which would be final and thereby ripe for judicial review under the Administrative Adjudication Act would also be final and reviewable under Sec. 8(g), Public Law 254, Acts of Ind. 1975. Therefore, the judicial review provisions contained in Public Law 254, Acts of Ind. 1975, preempt any applicability of the Administrative Adjudication Act to administrative agency determinations under Public Law 254, Acts of Ind. 1975. The Court, thus, finds and concludes that the Legislature intended to preclude judicial review of representation proceedings altogether."

We note that in similar legislation governing collective bargaining between school boards and certificated school employees, the Legislature provided for no special review procedures but, instead, specified that appeals could be taken under the Administrative Adjudication Act (Ind. Code 20-7.5-1-11 (b)). The Act under consideration contains no such provision with reference to representation determinations and certifications nor any indication that any judicial review of final orders of the Board is available, except under subsection (d) and (g) of section 8, and those subsections specifically except such issues.

This Court first set forth the constitutional requirements in *Warren* v. *Indiana Telephone Co.*, (1940) 217 Ind. 93, 26 N.E. 2d 399, and held that the availability of judicial review of administrative decisions was a constitutional due process requirement, saying:

"As an administrative agency, the [Industrial Board] is properly vested with power to determine facts, and the exercise of that power meets the requirements of due process of law, so far as the function of determining facts is concerned. It is not necessary to the exercise of due

process that the facts be determined by a court, so long as there is provided or exists an opportunity for a judicial review * * * .

"Strictly speaking, there is no such thing as an appeal from an administrative agency. It is correct to say that the orders of an administrative body are subject to judicial review; and that they must be so to meet the requirements of due process. Such review is necessary to the end that there may be an adjudication by a court of competent jurisdiction that the agency has acted within the scope of its powers; that substantial evidence supports the factual conclusions; and that its determination comports with the law applicable to the facts found." 217 Ind. at 104-105, 26 N.E. 2d at 404.

Because the Act precludes such judicial review of unit determinations and certification of exclusive bargaining representatives by the Board, it is unconstitutional.

## ISSUE III

The Board (Appellant) lastly asserts that the objectionable portions of Section 8 are, nevertheless severable from the rest of the Act and, therefore, do not render the entire Act invalid. In support of severability, it cites Ind. Code § 1-1-1-8 (Burns 1975) providing for severability of the numerous provisions of our comprehensive code enacted as such in 1976 and *Sharp* v. *Mishawaka*, (1972) 259 Ind. 530, 289 N.E. 2d 510 and cases there cited, wherein we reiterated that the issue of severability rests upon a judicial determination of the legislative intent and, that in making such determination, we may properly consider the object of the legislation but that the ultimate test is whether or not the Legislature would have passed the statute had it been presented without the invalid features.

The parties have argued vigorously and cited many authorities upon the subject of determining the legislative intent as to severability, but in the final analysis, they come down to the aforementioned ultimate test, i.e. would the Legislature

have passed the valid portion without the invalid had it known of the invalidity.

If we are to say that the invalid portions of the Act may be severed, we must also determine how representation proceedings are to be reviewed. We see only two possibilities. One way would be to subject them to the Administrative Adjudication Act, a result we have heretofore determined was not intended because not compatible with the purpose of the Act; and another would be to subject them to the review proceedings provided for unfair labor practice issues, a result which the Legislature has specified it did not want. There can be no question but that the Legislature intended that the Board (IEERB) should have absolute power over the threshold questions of representation. To say that it would have passed the Act without the invalid portions, had it known of their invalidity, would be to indulge in sheer speculation.

In arguing for severability the Board has cited the declaration of public policy and purpose set forth in the Act, "* * * *to promote orderly and constructive relationships between all public employers and their employees, * * * * (1)* granting to public employees the right to organize and choose freely their representatives; (2) requiring public employers to negotiate and bargain in good faith with employee organizations representing public employees and to enter into written agreements evidencing the results of such bargaining and (3) *establishing procedures to provide for the protection of the rights of the public employee, the public employer* and the public at large. Acts 1975, Public Law 254, Section 1." (Emphasis added by Board (Appellant)).

In considering the legislation, however, it does not appear that the primary question was whether or not public employees may organize and collectively bargain with public employers. Rather the questions were (1) under what circumstances would a minority of public employees and a public employer be compelled to accept a given labor organization as the exclusive representative of all employees in a specified

unit; and (2) what are the rights and procedures to be followed in the collective bargaining process such as the right to strike, mediation, compulsory arbitration, etc. Thus, in determining the intent of the Legislature, one does not look to whether the intent of the General Assembly was to give public employees the right to bargain collectively with public employers, but under what circumstances the Legislature intended to give these rights and how these rights were to be pursued.

In enacting Public Law 254, the General Assembly meant to give the Board broad powers and complete control over the process of selecting exclusive bargaining representatives, without providing any checks on this aspect of the Board's authority. The process of organization for purposes of collective bargaining begins with the steps set forth in § 7 of the Act. The unit determinations made by the Board under § 7 (d) and the Board's certification of exclusive representatives under either §§ 7 (a), (b) or (e) form a critical part of the Act. No collective bargaining can take place until employees are organized in an appropriate unit and until an exclusive representative is certified. The determination of what is an appropriate unit may in fact govern whether an employee organization will be able to establish a majority within that unit, either by election or authorization cards, in order to receive recognition or certification. Because the representation proceedings under § 7 are prerequisites to any collective bargaining under the Act, the provisions which shield this representation process from judicial review have a significant and crucial impact on any subsequent steps in the collective bargaining scheme.

The importance of judicial review of the representation procedure is heightened by the provisions in Public Law 254 which allow the Board to certify an exclusive representative without any election being held. Under § 7 (b), an employer is required, without an election, to recognize as exclusive representative any labor organization which presents evidence to the employer of a majority within a unit determined by the

Board to be appropriate. The Act gives neither employees nor the employer means by which to object to this required recognition and to obtain the opportunity of having an election. Thus, on its own authority the Board can specify an appropriate unit, knowing that the size and makeup of the unit will control whether a particular labor organization will immediately have a majority within that group, forcing the employer to recognize and the employees to accept the labor organization without an election. There is no question but that the General Assembly intended that the Board should have absolute power over these threshold questions.

The prohibitions on judicial review of such crucial agency actions, although procedural, are nevertheless integral parts of the statute, evincing the Legislature's intention to give the Board absolute power over the size and makeup of the bargaining unit and over the determination of whether the union represents a majority within that unit.

Because the objectional prohibitions on judicial review and the concomitant power given the Board are so unique and shape the fundamental character of Indiana's public employee bargaining statute, they are not severable from the remainder of the Act, and the entire statute must be voided.

In support of severability, the Board and intervenors also rely upon a severability provision found in Ind. Code § 1-1-1-8. Such reliance is misplaced. The existence or nonexistence of a severability clause is only one indication of legislative intent. Its presence or absence is not binding on a court in determining whether a statute should be enforced after the excision of unconstitutional portions. The inclusion of a severability clause creates a presumption that the remainder of the Act may continue in effect. The absence of a severability clause creates the opposite presumption: the Legislature intends the Act to be effective as an entirety or not at all. In the absence of a severability clause, "the burden is upon the supporter of the legislation to show

the separability of the provisions involved." *Carter* v. *Carter Coal Co.*, (1935) 298 U.S. 238, 312, 80 L. Ed. 1160, 1189. See 16 Am. Jr. 2d *Constitutional Law* § 188 at 420 (1964).

§ 1-1-1-8 is the severability clause contained in the Indiana Code of 1976, which codified all prior statutes through its effective date, January 21, 1976. It is obvious that in such an all encompassing enactment that the legislative intent was to re-enact all valid laws in an orderly arrangement and to provide for future legislation to follow the same order, with the purpose of promoting convenience and accuracy. The idea that should one or more provisions later be found invalid and contaminate wholly unrelated provisions, indeed the entire code, is inconceivable. Yet, it was prudent and proper for the Legislature to signify its intent to the contrary. That such provision for severability was intended to have another effect, i.e. to preempt for all times the severability of statutory provisions, one from the other, regardless of the legislative intent at the time of the enactments, as determind by established principles, is so irrational as to be ludicrous.

Additionally, although Ind. Code § 1-1-1-8, was first enacted in 1971, in *State ex rel. Pearcy* v. *Criminal Court of Marion County*, (1971) 257 Ind. 178, superseding opinion, 274 N.E. 2d 519, it was held to be a compilation only and without effect as law. This general severability clause was not enacted as law until 1976 and was not in effect in 1975, when the Legislature passed the Act under consideration. Obviously, it could not have been relied upon by the Legislature for any purpose prior to its enactment.

The judgment of the trial court is affirmed.

Givan, C.J. and Hunter and Pivarnik, JJ., concur; DeBruler, J., dissents with opinion.

## DISSENTING OPINION

DEBRULER, J.—Assuming that the prohibition against judicial review of the Board's unit determinations and representative certifications is unconstitutional as a denial of access to

courts, in my view, the presence of that faculty provision in the Act does not render the entire Act invalid. The right to such review held within proper bounds by the courts is restricted to determining whether the agency "has acted within the scope of its powers; that substantial evidence supports the factual conclusions; and that its determination comports with the law applicable to the facts found." *Warren* v. *Indiana Telephone Co.,* (1940) 217 Ind. 93, 105, 26 N.E. 2d 399, 404. To recognize the right of these parties to access to the courts for this limited purpose, where the Act specifically authorizes them the right to seek judicial review of final orders anyway, leaves the agency structure unchanged and the administrative decision-making process unchanged and unimpeded to any appreciable degree. The statute, with all of its provisions governing structure and process, in the event we simply hold the offending prohibition inoperative, would be left in "a sensible, complete form, capable of being executed alike against all similarly situated or affected." *In Re City of Mishawaka,* (1972) 259 Ind. 530, 535, 289 N.E.2d 510, 513.

To find these provisions inoperative yet declare that the balance of the Act may stand as severable would not result in this Court altering the essential public policies announced by the Legislature in the Act. We would not be substituting our own motion of the proper course for the law in this area for that of the Legislature thereby stepping beyond the bounds of judicial authority. And simply to find these prohibitions inoperative would not serve to tip the balance of power between public employer and public employee erected by the Act. The bargaining power of both is subject to being either increased or decreased by the unit determination and the representative determination, and the access to the courts is provided both on an equal basis to challenge those determinations. Upon the premises that: (1) a judicial excision of the violative prohibitions against review would have little discernible impact upon the operation of the Board and the relative bargaining power of public employer and employee left to function under the remaining statutory provisions;

(2) excision of the violative prohibitions would not alter the underlying value judgments arrived at by the Legislature and forming the basis for the Act; (3) excision of the violative prohibitions against review would not alter the relative bargaining positions of public employer and employee—it is my judgment that the Legislature intended for the remaining provisions of this Act, that is to say all of the Act with the exceptions of the few lines containing the prohibitions against judicial review, to be severable.

I would uphold the trial court's finding that the prohibitions against judicial review are unconstitutional, but set aside that part of the judgment voiding the entire statute.

NOTE.—Reported 365 N.E.2d 752.