Robert E. SCHLOSS, individually and as representative of a class, Appellant (Plaintiff Below),

v.

CITY OF INDIANAPOLIS, Appellee (Defendant Below).

No. 41S04–9005–CV–351.

Supreme Court of Indiana.

May 17, 1990.

Rehearing Denied July 11, 1990.

Henry J. Price, Jerry Garau, Price & Shula, Indianapolis, for appellant.

James B. Burroughs, City–County Legal Div., Indianapolis, for appellee.

SHEPARD, Chief Justice.

The questions presented in this case are whether the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521–559, preempts Ind.Code § 36–1–3–8(5) in the field of cable television franchise fees, and whether a cable television subscriber has standing to challenge the amount of such fees imposed by the City of Indianapolis.

The City of Indianapolis has granted cable television franchises to private companies. Pursuant to the Indianapolis and Marion County, Ind., Code of Ordinances § 8½–80(a) (1979),[1] these companies pay an annual franchise fee equal to three percent of gross accrued revenues from cable television operations. The fee is passed on to cable television subscribers as part of the cost of cable television service.

Robert Schloss is a cable television subscriber. His complaint alleged that the annual franchise fee created by the municipal ordinance exceeds the amount a local government may require under Ind.Code § 36–1–3–8(5) in that the amount collected is greater than the cost of regulating the franchises.[2] He sought declaratory and injunctive relief against the city, and compensation for the portion of the allegedly excessive franchise fees that had been passed on to him. He also asked the trial court to order the cable companies to pass any reduction in franchise fees through to their subscribers.

The trial court held that the federal Cable Act rather than Ind.Code § 36–1–3–8(5) controls the amount of franchise fees that local governments may charge. It concluded Schloss had no standing and dismissed the case. The Court of Appeals affirmed. *Schloss v. City of Indianapolis* (1988), Ind. App., 528 N.E.2d 1143. We grant transfer.

I. *Standing*

The City argues that Schloss lacks standing to challenge the amount of the franchise fee because he does not have a legally cognizable stake in the outcome of the litigation. The city asserts that any injury Schloss might suffer is indirect; the cable

---

1. Section 8½–80(a) states in pertinent part: The operator shall pay annually to the city an amount equal to the [sic] three (3) percent of the gross accrued revenues from cable television operations taken in during the year, and payment of the fee shall be on a quarterly basis.

2. The General Assembly has delegated broad powers to local units of government but a few powers are specifically prohibited. In both its original and amended version, Ind.Code § 36–1–3–8 (West 1983) (amended 1987), contains the same § 36–1–3–8(5), which states: A unit does not have the following: (5) The power to impose a license or other fee greater than that reasonably related to the administrative cost of exercising a regulatory power.

companies may elect to pass on the franchise fee to their customers or choose not to do so.

 The judicial doctrine of standing focuses on whether the complaining party is the proper person to invoke the court's power. It is designed to assure that litigation will be actively and vigorously contested. *See Indiana Educ. Employment Relations Bd. v. Benton Community Schools* (1977), 266 Ind. 491, 496–7, 365 N.E.2d 752, 754–5. The standing requirement is a limit on the court's jurisdiction which restrains the judiciary to resolving real controversies in which the complaining party has a demonstrable injury. *See City of Indianapolis v. Board of Tax Comm'rs* (1974), 261 Ind. 635, 308 N.E.2d 868.

 This Court recently described the interest which a party must possess to confer standing:

[I]n order to invoke a court's jurisdiction, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue.

*Higgins v. Hale* (1985), Ind., 476 N.E.2d 95, 101.[3]

 Whether Schloss has suffered any direct injury is answered by a stipulation of the parties: "The three percent (3%) franchise fee paid by American, Indianapolis Cablevision and Comcast to the City is a cost which is passed to individual customers and is included in the cost of all goods and services sold by these franchised cable companies." Record at 32. Schloss is an individual customer who would suffer direct injury as a result of excessive franchise fees.

Whether Schloss has a personal stake in the outcome of the suit is a more difficult question.

It is far from clear that Schloss would be entitled to collect the excess fees should they be determined unlawful. Neither the Cable Act nor Ind.Code § 36–1–3–8 provide reimbursement or other damages for consumers who are injured because a municipality charges excess fees. Indeed, the only legal peg upon which Schloss may hang his hat is 47 U.S.C. § 542(e): "Any cable operator shall pass through to subscribers the amount of any decrease in a franchise fee."

Counsel for the city urges us to read § 542(e) in conjunction with 47 U.S.C. § 543, which prevents states from regulating the rates that the cable operators charge their customers. The city notes that even if the franchise fee exceeds the amount permitted under federal law Schloss may not benefit from its reduction because a cable company could reduce the amount of the bill attributed to franchise fees while at the same time raising the total bill. The argument is alluring. Since the Congress deregulated cable prices, fees charged cable subscribers have risen dramatically. During the last decade rates have approximately doubled.[4] With rates escalating at that pace, eliminating part of a three per cent fee would be little noticed.

Schloss, however, seeks a reduction only in the franchise fee, and § 542(e) provides for that reduction, giving him a stake in the outcome of the litigation. Schloss has standing.

---

**3.** Schloss argues that he has public, as well as private standing. We also discussed the concept of "public standing" in *Higgins:*

Indiana cases recognize certain situations in which public rather than private rights are at issue and hold that the usual standards for establishing standing need not be met. This Court held in those cases that when a case involves enforcement of a public rather than a private right the plaintiff need not have a special interest in the matter nor be a public official.

476 N.E.2d at 101 (citations omitted). Cable television service now reaches about half of the nation's homes, and its role in American life has become so pervasive that litigants in dissolution cases sometimes list monthly cable charges as part of their necessary expenses. Nevertheless, we are inclined to view cable service as a luxury rather than as a necessity. It is not a matter of such general public concern that we are prepared to apply the public standing doctrine to it.

**4.** Carnevale, *Untangling the Debate Over Cable Television*, Wall St. J., March 19, 1990 at B1, col. 1.

## II. *Preemption*

■ Schloss argues that Ind.Code § 36–1–3–8(5) prohibits the city from imposing its three per cent fee. The city has responded by saying that the federal Cable Act, which permits a five percent fee, preempts state laws purporting to regulate cable prices. The trial court and the Court of Appeals agreed. We find it unnecessary to resolve the merits of this preemption defense because we conclude that Ind.Code § 36–1–3–8(5) does not apply to the city's cable television franchise fee. The city's authority to accept franchise fees from the cable companies stems from its power to enter into contracts with those companies and not from its power to issue licenses and charge fees tied to regulatory costs.

■ In reaching the conclusion that the cable franchise is not a license, we begin with the hornbook definition of a license:

> A permit, granted by an appropriate governmental body, generally for a consideration, to a person, firm, or corporation to pursue some occupation or to carry on some business subject to regulation under the police power. A license is not a contract between the state and the licensee, but is a mere personal permit.

*Black's Law Dictionary* 829 (5th ed. 1979) (citation omitted). A license fee is the consideration given for the receipt of the permit. It must be related to the government's cost for regulating the occupation or business. *Northern Indiana Coin Operators Ass'n v. South Bend* (1985), Ind. App., 478 N.E.2d 704, 706 (citing Ind.Code § 36–1–3–8 (1982)).

Indianapolis grants licenses and exacts regulation-related fees for a wide variety of business activities: it licenses the right to run massage parlors, operate taxicabs, deal in secondhand goods, and sell beverages, flowers, and foods from carts.[5] Each type of license is granted to a number of people in anticipation of competition among them. Every person wishing to engage in a licensed business must follow certain procedures set by ordinance and pay a fee.

Indiana Code § 36–1–3–8(5) applies to this type of a set fee, one assessed against numerous people in exchange for the opportunity to compete in the marketplace.

The agreements between the city and the cable companies are quite different from these licenses. The agreements involved in this case are franchise contracts. In these contracts, the city has granted to the cable operator both the right to sell cable television services in a particular area to the exclusion of other operators and the privilege of using the public ways of the city for the purpose of constructing and operating the cable television systems in the territory covered. The quid pro quo for the grant of these two significant privileges is the payment of a franchise fee.

These contracts are strikingly similar to one made in *City of Noblesville v. Noblesville Gas and Improvement Co.* (1901), 157 Ind. 162, 60 N.E. 1032. In *Noblesville*, the city entered into a contract with Noblesville Gas allowing the company to use the public ways for the conveyance and distribution of natural gas. In discussing that contract we said:

> The city had the unquestionable right to grant to any person, firm or corporation a franchise to occupy its streets and alleys for conveyance of gas to customers. But it was under no compulsion to convey such right to any one. The subject of grant rested in contract like any other matter. As the price of the right the city was at perfect liberty to demand that the charges for gas furnished the city and its inhabitants should not exceed certain prices. The appellee was at perfect liberty to reject or accept the city's proposal. The terms proposed on the one hand and accepted on the other made a contract as valid and enforceable as if made by two individuals.

> That the city had no power to regulate the rates of its licensee makes no difference. It had the power to contract. And the power to regulate as a governmental function, and the power to contract for

---

5. Indianapolis and Marion County, Ind., Code of Ordinances §§ 17–725 to 17–761, 17–606 to 17–618 (1976), 17–454 to 17–456 (1970), 17–808 to 17–811 (1989).

the same end, are quite different things. One requires the consent only of the one body, the other the consent of two. In this instance the city acted in the exercise of its power to contract, and it is therefore entitled to the benefits of its bargain.

*Id.* at 169, 60 N.E. at 1035 (citations omitted). We think this analysis applies to the cable franchises issued by the City of Indianapolis. The city had the power to contract with the cable companies for the use of its public ways. It was free to propose the payment of the three percent fee, and the cable companies were free to accept or reject the proposal. The cable companies accepted the fee, and a valid contract was made.

The only limits on the amount of franchise fees the City may charge cable television companies are Indianapolis and Marion County, Code of Ordinances § 8½–80(a), which sets the fee at three percent of gross accrued revenues, and § 542(b) of the Cable Act which establishes a national cap at five percent of gross revenues.[6] Section 8½–80(a) is not contrary to Ind.Code § 36–1–3–8(5). Indiana Code § 36–1–3–8(5) is simply inapplicable.

We vacate the opinion of the Court of Appeals and affirm the judgment of the trial court dismissing Schloss's claim.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.

6. 47 U.S.C. § 542(b) states in pertinent part: Amount of fees per annum. For any twelve-month period, the franchise fees paid by a cable operator with respect to any cable system shall not exceed 5 percent of such cable operator's gross revenues derived in such period from the operation of the cable system.