JACOB WEINBERG NEWS AGENCY, INC. *v.* CITY OF MARION, INDIANA, MAX COLLINS, FARRELL RANDALL, DAVID WHITTON, DONALD OWINGS, AND ALL OTHER MEMBERS OF THE METROPOLITAN POLICE DEPARTMENT OF THE CITY OF MARION, INDIANA, TOGETHER WITH ALL OTHER CITY ENFORCEMENT OFFICIALS.

[No. 2-273A40. Filed February 10, 1975.]

*Paul G. Roland, Rex P. Killian, Ruckelshaus, Bobbitt & O'Connor,* of Indianapolis, *James R. Browne, Gemmill Browne Torrance Morin Spitzer & Herriman,* of Marion, for appellant.

*Patrick N. Ryan, Jack B. Welchons, Ryan & Welchons,* of Marion, for appellees.

WHITE, J.—The Jacob Weinberg News Agency, Inc. (Weinberg) brought suit against the City of Marion and its enforcement officials (City) seeking a judgment declaring a city ordinance unconstitutional as an abridgement of plaintiff's free press and property rights as a wholesale distributor of magazines and enjoining its enforcement. The court dismissed the action for the stated reason that "[e]nforcement of the Ordinance would not limit any of plaintiff's legal rights in such a manner that he is entitled to challenge the constitutionality of the Ordinance by way of declaratory judgment pursuant to TR. 57."[1] We reverse.

The ordinance purports to define "pornographic materials" and then to make it an offense, punishable by fine not exceeding $300.00 and/or imprisonment not exceeding six months, (1) for anyone in charge of a store or retail outlet to knowingly permit a minor (meaning a person under eighteen years of age) to enter upon the premises of a busi-

---

1. The memorandum opinion which was a part of the dismissal entry also suggests that even if Weinberg were subject to prosecution under the ordinance *Bryarly* v. *State* (1953), 232 Ind. 47, 111 N.E.2d 277, might justify denying him declaratory relief.

ness establishment which sells or displays pornographic materials, (2) for a minor knowingly to enter upon such premises or for his parents knowingly to permit him to do so, and (3) requires any merchant knowingly selling or displaying such materials to have a sign visible from the outside reading, in letters two inches high, "Persons Under the Age of Eighteen (18) Years Prohibited from Entering These Premises" on each door of the premises available for public entry.

Plaintiff-appellant Weinberg's amended complaint alleges, in addition to the enactment of the ordinance and its verbatim text, the following:

"1.   For more than 10 years immediately last past Plaintiff has been the sole authorized wholesale distributor in and around the City of Marion, Indiana, of nationally distributed magazines and publications entitled to 2nd class mailing privileges under the laws of the United States of America, and particularly those hereinafter identified and described.

"2.   *   *   *

"3.   Said Ordinance is unconstitutional in that among other things it violates the First and Fourteenth Amendments to the Constitution of the United States of America and Article 1, Section 9 and Article 1, Section 12 (Bill of Rights) of the Indiana Constitution.

"4.   *   *   *   [Alleging a theory of invalidity by reason of a contention that a state statute had pre-empted the field.]

"5.   Between July 1, 1972, and the date of filing hereof Defendants have threatened to prosecute certain retailers in said CITY served by plaintiff with prosecution for the alleged violation of said Ordinance unless they complied specifically with same in offering for resale the following described publications, among others, distributed to said retailers by Plaintiff and determined solely by Defendants to be pornographic, to-wit: Playboy, Dude, Cavalier, Caper, Adam, Penthouse, Stag, Male, Sexology, Modern Man.

"6.   As a proximate consequence of said threats, said retailers have ordered Plaintiff to remove said publications from their sales racks, and Plaintiff's sale thereof has been and will continue to be drastically curtailed if not wholly impeded so long as Defendants are permitted directly or indirectly to influence said retailers or others of their class via the utterance of exercise of such threats.   Accordingly,

Plaintiff has and will sustain inestimable and irreparable damage, for which it has no adequate remedy at law.

"7.   Defendants said acts obviously are arbitrary, capricious and oppressive and deprive Plaintiff of his rights and property without due process and by reason of the premises an emergency exists wherey [sic] Defendants should be enjoined without notice pending a hearing to be set on Plaintiff's application for temporary injunction."

A restraining order was issued when Weinberg filed a $5,000.00 "Injunction Bond". Thereafter the City (i.e., all defendants) filed a four part pleading which combined (I) a motion to dismiss, (II) a motion to dissolve the restraining order and to forfeit the bond, (III) an answer denying all allegations of the complaint except the enactment of the ordinance, and (IV) a request for jury trial.

City's motion to dismiss reads:

"I

"Come now defendants herein by their attorney, Patrick N. Ryan (Assistant City Attorney), and for their motion to dismiss under Trial Rule 12 say that:

"1.   Plaintiff does not have standing to bring this action, since General Ordinance 9-1970 does not affect him.

"2.   Plaintiff is not the real party in interest.

"3.   Said Ordinance affects only certain retail merchants. Plaintiff is not a retail merchant.

"4.   This Ordinance does not restrict plaintiff's right to speak, write, or print. It does not limit plaintiff's alleged right to distribute smut and pornographic magazines.

"5.   Plaintiff has failed to serve due notice of this suit upon the Attorney-General.

"WHEREFORE defendants move the Court to dismiss this action and for all other proper relief.

### *"MEMORANDUM*

"Plaintiff, in its complaint, asks the Court to declare General Ordinance 9-1970 unconstitutional. This Ordinance excludes children from rooms where pornographic magazines are sold or displayed. Specifically it (1) provides that no retailer shall knowingly permit children to enter such a room, (2) forbids children to enter such a room, and (3) requires each retailer to post a sign excluding children from such room.

"The Court should dismiss this complaint for the following reasons:

A. Plaintiff has no standing to bring this suit. It is not the real party in interest. The Ordinance does not affect plaintiff corporation, a wholesale distributor of pornographic magazines. It affects only retailers. Plaintiff stands in no danger of prosecution; the Ordinance does not limit any of plaintiff's legal rights.

B. The Ordinance does not restrict plaintiff's freedom to speak, write or print. It does not deny this corporation due process or due course of law. This Ordinance is so clearly constitutional that plaintiff's complaint, on its face, does not state a viable claim.

C. Plaintiff has failed to serve due notice upon the Attorney-General. Because of this failure, the Court lacks jurisdiction of the suit."

On August 3, 1972, oral argument and evidence were heard on Weinberg's request for temporary injunction and on the City's motions. Both the hearing and the restraining order were continued until August 9, 1972. On that date Weinberg filed a motion for summary judgment, further evidence and argument were heard and concluded, and all pending motions were taken under advisement. Also, the restraining order was continued in effect until further order and City was ordered to respond before August 23, 1972, to Weinberg's motion for summary judgment.

On August 17, 1972, City responded to Weinberg's motion for summary judgment and on September 7, 1972, a letter from the Attorney General was filed which stated he would not appear "due to the local nature of said cause." A further entry on that date reads:

"Comes now the Court and files its Order of Dismissal, which order reads in the words and figures following, to wit: [caption omitted]

## "ORDER OF DISMISSAL

"This action is brought pursuant to TR 57, Indiana Rules of Procedure, which sets out in a very general way the Indiana rule concerning declaratory judgments. Declaratory relief has been denied in Indiana where it involves determination of serious criminal liability. *Bryarly* v. *State,* 232 Ind. 47, 111 N.E.2d 277 (1953). Plaintiff

claims he has a right to bring this legal action because proceeds from the sales of his magazines have been diminished by the threat of enforcement of General Ordinance 9-1970 of the City of Marion, Indiana. This is an ordinance providing criminal penalties against retail merchants who violate the provisions of the Ordinance. This Ordinance pertains to premises where allegedly pornographic magazines are displayed or sold. Specifically it (1) provides that no retailer shall knowingly permit minors under the age of eighteen years to enter such premises operated by him, (2) forbids minors under the age of eighteen years to enter such premises, and (3) requires each retailer to post a sign prohibiting entry by minors under the age of eighteen years.

"Plaintiff is not a retail merchant, but is a wholesale distributor. Enforcement of this Ordinance could not result in criminal penalties against plaintiff. Plaintiff as a wholesale distributor cannot be prosecuted for violation of this Ordinance. Enforcement of the Ordinance would not limit any of plaintiff's legal rights in such a manner that he is entitled to challenge the constitutionality of the Ordinance by way of declaratory judgment pursuant to TR 57. There are no retail merchants, who might be prosecuted under this Ordinance, who are joined as parties in this action. *King* v. *Harris* (1965), 140 Ind. [App.] 9; 212 N.E.2d 387; 10 I.L.E. Declaratory Judgment, Sec. 13, p. 71; 2 Bobbitt, Works' Indiana Practice, Sec. 30.4, pp. 501-502.

"WHEREFORE, this action is dismissed under TR 12, the restraining order issued herein is dissolved, and plaintiff's bond is forfeited. Judgment against plaintiff for costs.

[Judge's signature and date omitted]

and this action is dismissed under TR 12, the restraining order issued herein is dissolved, and the plaintiff's bond is forfeited. Judgment against plaintiff for costs."

To dismiss an action (or a complaint) pursuant to a Rule 12 motion it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts provable under the complaint. *State* v. *Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604, 606, 36 Ind. Dec. 17; *Sacks* v. *American Fletcher National Bank and Trust Co.* (1972), 258 Ind. 189, 279 N.E.2d 807, 29 Ind. Dec. 596.

The trial court's memorandum of dismissal is premised on the assumption that Weinberg's only claim of "right to bring this legal action", i.e., his claim to standing, is economic; that *"proceeds* from the sales of his magazines have been diminished by the threat of enforcement of" the ordinance. (Our emphasis). Were he in the business of wholesaling such non-communicative merchandise as paper milk cartons or vitamin tablets, his interest in restraining the city from acts tending to diminish his sales would be merely pecuniary. There is authority that such an interest would be insufficient to give him standing to challenge an ordinance which imposes no direct penalty on anything he does in the course of his business. *Ex-Cell-O Corp.* v. *Chicago* (CA 7, 1940), 115 F.2d 627. See also, *Department of State, et al.* v. *Kroger Grocery & Baking Co.* (1943), 221 Ind. 44, 46 N.E.2d 237. Whether it is true that the economic interest of a manufacturer, distributor, or wholesaler of merchandise in maintaining a free retail market for his stock in trade is too remote to give him standing to challenge restrictions imposed by ordinance on his retailers, we need not here decide. Weinberg's magazines[2] are mute only in the literal sense that they utter no sound, but they do convey thoughts (good or bad) by printed words and pictures. This attribute of his merchandise entitles his business to the qualified protection of the First Amendment through the Fourteenth Amendment, Constitution of the United States.

*Bantam Books, Inc.* v. *Sullivan* (1963), 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584, is a case which bears striking and significant similarity to the case at bar. The State of Rhode Island created a commission whose function was to advise booksellers. It had no enforcement powers and no one was ever prosecuted for the sale or possession of any books published by the plaintiff-appellants, who were out-of-state publishers with whom the commission had no contact. Nevertheless, because of the commission's advice, booksellers in Rhode

---

2. Five of them were admitted into evidence and are a part of the record of this appeal.

Island refused to sell several of plaintiffs' books. The publishers brought an action in the Rhode Island Superior Court to declare unconstitutional the law creating the commission and to declare unconstitutional and to enjoin the practices of the commission. The Superior Court granted some relief but the Rhode Island Supreme Court reversed. The United States Supreme Court reversed and remanded. Much of what is said in the opinions of the Justices may be helpful in future stages of this case, but at this point we are concerned only with the *dicta* in note 6 of Justice Brennan's opinion (372 U.S. at 64, 83 S.Ct. at 636, 9 L.Ed.2d at 589) which reads in part as follows:

> "Appellants' standing has not been, nor could it be, successfully questioned. The appellants have in fact suffered a palpable injury as a result of the acts alleged to violate federal law, and at the same time their injury has been a legal injury. * * * Furthermore, appellants are not in the position of mere proxies arguing another's constitutional rights. The constitutional guarantee of freedom of the press embraces the circulation of books as well as their publication. Lovell v. City of Griffin, 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949, and the direct and obviously intended result of the Commission's activities was to curtail the circulation in Rhode Island of books published by appellants. Finally, pragmatic considerations argue strongly for the standing of publishers in cases such as the present one. The distributor who is prevented from selling a few titles is not likely to sustain sufficient economic injury to induce him to seek judicial vindication of his rights. The publisher has the greater economic stake, because suppression of a particular book prevents him from recouping his investment in publishing it. Unless he is permitted to sue, infringements of freedom of the press may too often go unremedied."

That *Bantam Books, supra,* stands for the proposition that a distributor of books, magazines, pictures, and other communicative media, as well as the retailer or exhibitor, has standing to challenge allegedly inhibitory state action is made clear by *Interstate Circuit, Inc.* v. *City of Dallas* (1968), 390 U.S. 676, 690, 88 S.Ct. 1298, 1306, 20 L.Ed.2d 225, 235, n. 22, which states in part:

"Finally, appellant United Artists contends the ordinance unconstitutionally infringes upon its rights by not providing for participation by a distributor, who might wish to contest where an exhibitor would not. *Of course the distributor must be permitted to challenge the classification,* cf. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 64, 83 S.Ct. 631, 9 L.Ed.2d 584, n. 6 (1963), but the appellee assures us he may (see n. 2, supra), and United Artists was permitted to intervene in the trial court." (Our italics.)

The Dallas city ordinance involved in that case is set out verbatim in the appendix to the *Interstate* opinion. No sanction provided by that ordinance operates directly on a distributor. Penalties are provided for violating exhibitors and for violating minors but, as the trial court said of the plaintiff-distributor at bar, "[e]nforcement of this Ordinance could not result in criminal penalties against the plaintiff [i.e., the distributor]." *Interstate* and *Bantam* clearly demonstrate that such fact does not justify the trial court's conclusion that "[e]nforcement of the Ordinance would not limit any of plaintiffs' legal rights in such a manner that he is entitled to challenge the constitutionality of the Ordinance by way of declaratory ordinance pursuant to TR. 57."

*Interstate* and *Bantam* both hold that persons (natural or corporate) engaged in businesses comparable to Weinberg's have an interest sufficient to give them standing to maintain actions of the nature Weinberg is here attempting to prosecute.

Trial Rule 57, Indiana Rules of Procedure (TR. 57), to which the dismissal memorandum alludes, reads as follows:

### "DECLARATORY JUDGMENTS

"The procedure for obtaining a declaratory judgment shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. Declaratory relief shall be allowed even though a property right is not involved. Affirmative relief shall be allowed under such remedy when the right thereto is established. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."

This is a verbatim duplicate of federal rule 57, with only two exceptions: 1) the deletion of the citation of the federal declaratory judgment statute, and 2) the addition of the sentence: "Declaratory relief shall be allowed even though a property right is not involved." The Indiana Supreme Court's 1969 adoption (effective January 1, 1970) of the federal rule as thus amended enlarges the classes of persons who have standing to obtain declaratory relief. As to that aspect it has the effect of overruling *Department of State* v. *Kroger, etc., supra,* and deeply eroding the authority of the *dicta* in *Bryarly* v. *State, supra.*[3]

It is clear from Weinberg's complaint (as well as from the evidence the trial court heard) that he is suing *in behalf of himself* to protect *his own* claim to a First Amendment right to distribute magazines. That claim gives him standing to contest the validity of the ordinance, *as it affects him,* and to ask the court to restrain the City and its agents from threatening to enforce it against his consignees or retailers, regardless of whether it may ultimately be determined that the ordinance is valid and/or that some magazines distributed by Weinberg are either obscene or otherwise properly subject to the restraints on their exhibition which the ordinance purports to impose. The rights of other persons may be vindicated should *Weinberg* ultimately prevail but that result is only incidental to the vindication of his own rights. He is not (to paraphrase *Bantam, supra*) in the position of a mere proxy arguing the rights of his retailers; he is arguing his own claim that his own constitutional rights are infringed. The dismissal must be reversed.

The dissolution of the preliminary injunction (referred to as a restraining order)[4] and the bond forfeiture appear to

---

3. We do not mean to imply that TR. 57 nullifies the basic holding in *Bryarly* that "a defendant in a criminal case, after having received an adverse decision on a motion to quash the charge against him, may [not] then bring an action under the Uniform Declaratory Judgment Act to have the court again pass upon the constitutionality of the statute upon which the prosecution is based. . . ." (232 Ind. at 51.) See also, 4 Harvey and Townsend, INDIANA PRACTICE 1-6.

4. A restraining order is granted without notice or opportunity for

have been ordered only because the complaint was dismissed. With the reversal of the dismissal we, therefore, order the bond forfeiture set aside and the preliminary injunction reinstated, effective on the date of the certification of this opinion, subject to the maintenance of proper and adequate security and to the trial court's inherent and continuing authority to enter such further orders as, in the exercise of discretion, are found warranted. But that action will not prejudicate liability or non-liability on the injunction bond in the event of a future determination that the restraining order or preliminary injunction was wrongfully granted.

The judgment is reversed and the cause is remanded with directions for further proceedings in conformity with this opinion.

Sullivan, P.J., and Buchanan, J., concur.

hearing. Restraint continued after a hearing is a preliminary injunction. Trial Rule 65. The distinction has practical significance in regard to appealability, since a restraining order is not within any class of appealable interlocutory orders, but preliminary injunctions are. Appellate Rule 4; *Town of Wakarusa* v. *Bechtel* (1948), 226 Ind. 101, 78 N.E.2d 161.