

**FILED**

Dec 16 2016, 8:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James R. Williams
Matthew L. Kelsey
DeFUR • Voran, LLP
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| The Board of Commissioners of Union County, Indiana,<br><br>*Appellant-Plaintiff,*<br><br>v.<br><br>Brandye Hendrickson, in her official capacity as Commissioner of the Indiana Department of Transportation, and the State of Indiana,<br><br>*Appellees-Defendants.* | December 16, 2016<br><br>Court of Appeals Case No. 81A01-1603-PL-696<br><br>Appeal from the Union Circuit Court<br><br>The Honorable Brian D. Hill, Special Judge<br><br>Trial Court Cause No. 81C01-1507-PL-118 |

**Barnes, Judge.**

# Case Summary[1]

The Board of Commissioners of Union County ("the County") appeals the dismissal of its complaint against Brandye Hendrickson, in her official capacity as Commissioner of the Indiana Department of Transportation ("INDOT"), and INDOT itself (collectively "INDOT"). We reverse and remand.

# Issues

The restated issues before us are:

> I.    whether this court is reviewing the dismissal of a complaint under Indiana Trial Rule 12(B)(6) or the granting of summary judgment under Indiana Trial Rule 56;
>
> II.   whether the trial court properly concluded that the County lacked standing to seek a declaratory judgment against INDOT; and
>
> III.  whether the trial court properly concluded that the County lacked standing to seek an injunction against INDOT.

# Facts

The facts as alleged by the County are that, in 2010 or 2011, INDOT performed construction and repair work on State Highway 27 in the County. The County

---

[1] We heard oral argument in this case on November 3, 2016, at the University of Notre Dame School of Law. We thank counsel for their helpful arguments and for making the trip to South Bend. We also thank the administration, faculty, and students of the School of Law, as well as members of the St. Joseph County bar and judiciary, for their hospitality.

had no involvement in this roadwork project. During the project, INDOT allegedly damaged septic systems on the properties of three private landowners in the County as a result of improper or negligent work. This damage "may impact other properties and may implicate a broader public health and safety concern for Union County . . . ." App. p. 25. The County asked INDOT to investigate and remedy these problems, but INDOT failed to do so.

[4] On July 31, 2015, the County filed a declaratory judgment and injunctive relief action against Hendrickson and INDOT. The County sought an order "declaring state highway 27 and any associated storm drain the responsibility of INDOT and not Union County . . . ." *Id.* Additionally, it sought an order "compelling INDOT to immediately remedy any and all negligent and/or improper construction and repair work that resulted in septic and/or public health issues . . . ." *Id.* at 26.

[5] INDOT filed a motion to dismiss, asserting that the County lacked standing to sue. As part of its response to the motion to dismiss, the County filed an affidavit from its Sanitarian, Ron Parker. Parker stated in the affidavit, "Upon information and belief, The Highway Repair has resulted in raw sewage flowing outside appropriate septic and drainage systems. This poses a public health and safety risk for Union County, Indiana and proximately caused violations of the local health code." *Id.* at 47.

[6] Two weeks after the County filed its response and Parker's affidavit, INDOT filed a motion for an extension of time to file a reply in support of its motion to

dismiss. However, on the same day INDOT filed that motion, the trial court granted INDOT's motion to dismiss, agreeing that the County lacked standing to bring suit. The trial court did not indicate whether it considered Parker's affidavit, nor was a hearing held on the motion to dismiss. The County filed a motion to correct error. In response, INDOT requested that Parker's affidavit be stricken in addition to the motion to correct error being denied. The trial court denied the motion to correct error, without expressly ruling on the motion to strike Parker's affidavit. The County now appeals.

## Analysis

### I. Motion to Dismiss versus Motion for Summary Judgment

[7] The first issue we address is whether we are reviewing the dismissal of a complaint under Indiana Trial Rule 12(B)(6) or whether INDOT's motion to dismiss was converted to a Trial Rule 56 motion for summary judgment when the County included Parker's affidavit with its response to INDOT's motion. Trial Rule 12(B) states in part:

> If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

[8] This case is somewhat similar to *Carrell v. Ellingwood*, 423 N.E.2d 630 (Ind. Ct. App. 1981). In that case, there was a 12(B)(6) motion to dismiss a will contest

as untimely. The plaintiffs filed a response to the motion that included an affidavit. On the same day the response was filed and without notice to the movant, the trial court entered an order expressly "dismissing" the will contest as untimely and noting that the plaintiffs had filed an affidavit in their response to the motion to dismiss. On appeal, this court held that it was error for the trial court to apparently consider the affidavit in ruling on the motion to dismiss without providing the other party a reasonable time to present additional materials to the court for its consideration. *Carrell*, 423 N.E.2d at 634. However, this court went on to address, on the merits, whether summary judgment in favor of the will contest defendant was properly granted; after considering the affidavit, the court held that it was not and reversed. *Id.* at 636; *see also Lanni v. National Collegiate Athletic Ass'n*, 989 N.E.2d 791, 797 (Ind. Ct. App. 2013) (holding trial court abused its discretion in converting 12(B)(6) motion to dismiss into motion for summary judgment). A trial court's failure to give explicit notice of its intended conversion of a motion to dismiss to one for summary judgment is reversible error if a party is not afforded a reasonable opportunity to respond to the introduction of evidence and that party is thereby prejudiced. *Azhar v. Town of Fishers*, 744 N.E.2d 947, 950-51 (Ind. Ct. App. 2001).

[9] Here, the trial court never stated whether it was considering Parker's affidavit when ruling on the motion to dismiss; on the other hand, it never expressly excluded the affidavit from consideration, even after INDOT asked the trial court to strike it from the record as part of its response to the County's motion

to correct error. Additionally, the trial court's ultimate ruling was that it was dismissing the complaint. It did not state that it was granting summary judgment to INDOT, and it gave no indication that it considered Parker's affidavit when making its ruling.

[10] At oral argument, counsel for the County conceded that INDOT was not given an adequate opportunity to respond to Parker's affidavit. We conclude that it was erroneous for the trial court to proceed to rule on the motion to dismiss without clarifying whether it was considering the affidavit, and if so to provide INDOT an opportunity to respond in accordance with the summary judgment rules. However, unlike in *Carrell*, we believe that in the present case it would be inappropriate to proceed to review this case as a grant of summary judgment, particularly given the fact that the trial court stated that it was dismissing the complaint, not granting summary judgment, and because it did not expressly state that it was considering Parker's affidavit. Instead, we will review this case purely as a 12(B)(6) dismissal and assume that the trial court "excluded" Parker's affidavit from consideration. As such, we will not consider Parker's affidavit in our review. On remand, either party may file for summary judgment if they so choose.

[11] A motion to dismiss for a plaintiff's alleged lack of standing may be brought under Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted. *Thomas v. Blackford County Area Bd. Of Zoning Appeals*, 907 N.E.2d 988, 990 (Ind. 2009). When ruling upon a 12(B)(6) motion, the allegations of the complaint must be taken as true. *Id.* A successful motion to

dismiss for lack of standing must establish that the lack of standing is apparent on the face of the complaint. *Id.* The standard of review for a ruling on a 12(B)(6) motion to dismiss is de novo, and this court owes no deference to the trial court's decision. *Bellows v. Board of Comm'rs of County of Elkhart*, 926 N.E.2d 96, 110 (Ind. Ct. App. 2010).

## II. *Declaratory Judgment*

[12] The County sought two different forms of relief, and different principles apply to each of them. First, the County sought an order "declaring state highway 27 and any associated storm drain the responsibility of INDOT and not Union County, Indiana." App. p. 25. INDOT contends that, by this language, the County is seeking a preemptive determination that it cannot be held liable to any private landowners for damage to their property caused by the highway repair project. We disagree and conclude the County was entitled to seek declaratory relief on this matter.

[13] The Declaratory Judgment Act states that trial courts may "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Ind. Code § 34-14-1-1. The Act further provides:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

I.C. § 34-14-1-2.[2]  Additionally, the enumeration of certain types of relief in parts of the Act, such as section 2, "does not limit or restrict the exercise of the general powers conferred in section 1 of this chapter in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty."  I.C. § 34-14-1-5.

[14]  INDOT suggests in part that the County merely is seeking to shift liability to INDOT for any potential lawsuits related to the release of sewage along the highway and that is not a proper use of a declaratory judgment action.  It is true that a party cannot seek a declaratory order determining their liability to third parties.  *See Union Fed. Sav. Bank v. Chantilly Farms, Inc.*, 556 N.E.2d 9, 11 (Ind. Ct. App. 1990).  The proper venue for determining such liability is in any suit brought by the third party.  *Id.*

[15]  Here, however, the County was not seeking any express declaration of its liability to any third parties, unlike in *Chantilly Farms*.  The ultimate effect of any declaration regarding responsibility for State Highway 27 is beyond the scope of the present action.  Rather, the County's request for declaratory judgment may be viewed as akin to a dispute regarding ownership of or title to real property, which is an appropriate matter for resolution by declaratory judgment.  *See Baxter v. Baxter*, 138 Ind. App. 24, 27, 195 N.E.2d 877, 879

---

[2] A "person" is defined as "any person, partnership, limited liability company, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever."  I.C. § 34-14-1-13.  INDOT makes no argument that the County is not a "person" under this definition.

(1964). Additionally, aside from the matter of possible liability to any particular third-party private property owners for septic field leakage, a declaration of responsibility for State Highway 27 and its drainage would clarify which governmental unit must arrange and pay for any necessary repairs to the road and drainage system. *See Chanley v. State*, 596 N.E.2d 933, 934 (Ind. Ct. App. 1992) ("The State and all counties have a common law duty to exercise reasonable care in the design, construction, maintenance, and repair of highways and roads within their control"), *trans. denied*.

[16] The State also contended at oral argument that the County failed to state an adequate declaratory judgment claim because it did not precisely specify what "writing" its claim was based upon with respect to responsibility for State Highway 27. First, we would note that to the extent there would be a lack of clarity as to a writing that governed State Highway 27, that would be a matter for resolution later in the proceedings, if indeed no such writing could be located, and not a reason for dismissal of the complaint. Second, the Declaratory Judgment Act clearly states that trial courts may grant declaratory relief, even if a matter does not strictly fall within one of the stated statutory parameters for such relief. *See* I.C. § 34-14-1-5.

[17] Finally and perhaps most importantly, it appears to us that there should be a relatively simple way of determining responsibility for State Highway 27. We note that under Indiana Code Section 8-23-4-2(a), INDOT shall designate which roads constitute the state highway system. INDOT has responsibility for those streets and roads that make up the state highway system. I.C. § 8-23-1-40.

Additionally, the INDOT commissioner "shall at all times maintain maps of Indiana, which must show all the highways that constitute the state highway system, the arterial and local highway systems of each county, and the arterial and local street systems of each municipality." I.C. § 8-23-4-6. According to these and other highway-related statutes, it should be possible to determine and issue a declaration as to who bears responsibility for State Highway 27 and its drainage system. We reverse the dismissal of the County's request for a declaratory judgment to that effect.

### III. Injunctive Relief

[18] Next, we address the separate issue of whether the County had standing to pursue injunctive relief against INDOT compelling it "to immediately remedy any and all negligent and/or improper construction and repair work that resulted in septic and/or public health issues . . . ." App. at 26. There does not appear to be any prior reported case in which a locality has attempted to sue a State entity for negligently causing some kind of physical harm within the locality. The standing requirement is intended to assure that litigation will be actively and vigorously contested. *State ex rel. Cittadine v. Indiana Dep't of Transp.*, 790 N.E.2d 978, 979 (Ind. 2003). "It focuses on whether the complaining party is the proper person to invoke the court's power." *Id.* Under the general standing rule, "only those persons who have a personal stake in the outcome of the litigation and who show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct will be found to have standing." *Id.* "It is generally insufficient that a

plaintiff merely has a general interest common to all members of the public."

*Id.*

[19] We further note that the standard for obtaining injunctive relief is different than the standard for obtaining a declaratory order. A party may seek equitable injunctive relief if monetary damages are too speculative to quantify. *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1246-47 (Ind. 2003). If a party suffers purely economic injury and there is an adequate remedy at law, injunctive relief should not be ordered. *Indiana Family & Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 162 (Ind. 2002). A party seeking an injunction generally bears the burden of proving an injury that is certain and irreparable if the injunction is denied. *Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc.*, 751 N.E.2d 702, 713 (Ind. Ct. App. 2001). The County here additionally was seeking a mandatory injunction, which is an injunction "'that orders an affirmative act or mandates a specified course of conduct.'" *City of Gary v. Majestic Star Casino, LLC*, 905 N.E.2d 1076, 1082 n.6 (Ind. Ct. App. 2009) (quoting BLACK'S LAW DICTIONARY 800 (8th ed. 2004)), *trans. denied*. The principles behind mandatory and prohibitory injunctions are similar, although courts generally are more reluctant to grant mandatory injunctions. *Crossman Communities, Inc. v. Dean*, 767 N.E.2d 1035, 1040 (Ind. Ct. App. 2002).

[20] INDOT generally argues, in part, that, unless the County can show some injury to property that it owns, as opposed to property owned by private parties, it cannot have standing to make any claims with respect to septic system leaks allegedly caused by INDOT's negligence. Without such a showing, INDOT

asserts that the County has not suffered a "direct injury" as required to establish standing. *See Cittadine*, 790 N.E.2d at 979. INDOT asserts that only directly-affected property owners could sue. It certainly is true that there is no allegation of any property directly owned by the County having been affected by INDOT's purported negligence. We do not believe, however, that this precludes the County from having standing to seek this injunction.

[21] In its ruling against the County, the trial court relied upon *Jacob Weinberg News Agency, Inc. v. City of Marion*, 163 Ind. App. 181, 322 N.E.2d 730 (1975). The County claims that case in fact supports a finding that it has standing here. In that case, a wholesale distributor of pornographic magazines sought to enjoin a local ordinance from going into effect that would have been enforced against retailers of those magazines but not the wholesaler. The wholesaler argued that such enforcement would impact its sales and its First Amendment rights. The trial court dismissed the wholesaler's complaint for lack of standing because the ordinance would not be enforced directly against the wholesaler. This court reversed, holding that the wholesaler, although not subject directly to enforcement of the ordinance, was entitled to bring the action in order to vindicate its own First Amendment rights. *Weinberg*, 163 Ind. App. at 190, 322 N.E.2d at 735. The County relies on this case for the proposition that a party does not necessarily have to suffer a "direct injury" in order to have standing to bring a suit. However, it is readily distinguishable because there was an assertion that the wholesaler's First Amendment rights were in fact being directly impacted by the ordinance. Here, the County is not asserting any

comparable direct impact on a constitutional right, as opposed to a more general impact on the County's citizens' health.

[22] Still, we conclude that assertion is sufficient to grant the County standing to seek an order compelling INDOT to repair roadwork that allegedly has the potential to impact public health and sanitation. Under Indiana's Home Rule Act, it is intended that counties be granted "all the powers that they need for the effective operation of government as to local affairs." I.C. § 36-1-3-2. A county may exercise any power it has so long as it is not expressly denied by the Indiana Constitution or a statute and it is not expressly granted to another entity. I.C. § 36-1-3-5. "Any doubt as to the existence of a power of a unit shall be resolved in favor of its existence." I.C. § 36-1-3-3. It is well understood that counties "may regulate certain conduct . . . for the promotion of public health, safety, and welfare." IND. LAW ENCYCLOPEDIA Counties, § 5 p. 202 (2008); *see also* I.C. § 16-20-2-2(a) (requiring counties to establish and maintain a local health department unless they elect to create a multi-county health department under Indiana Code Chapter 16-20-3). And, counties as units of government have the power to sue and be sued. I.C. § 36-1-4-3.

[23] It is true that the Home Rule Act does not allow a county to "prevent a state agency from carrying out statutorily authorized actions." *Indiana Dep't of Natural Res. v. Newton County*, 802 N.E.2d 430, 433 (Ind. 2004). In *Newton County*, however, the specific question was whether a county could adopt ordinances purporting to trump the State's authority to acquire land as permitted by statute, and our supreme court held that it could not. *Id.* Here,

the County is not attempting to prevent INDOT from carrying out any activity; rather, it is alleging negligence in the manner in which INDOT carried out its road maintenance. This would generally be a proper subject for a lawsuit against INDOT. *See Chanley*, 596 N.E.2d at 934.

[24] We also see no reason why the County would not have standing to make such a claim, although this is a unique lawsuit. One standing doctrine that is informative here would be the "public standing" doctrine. The public standing doctrine applies in cases where public rather than private rights are concerned and the enforcement of a public rather than a private right is involved. *Cittandine*, 790 N.E.2d at 983. The public standing doctrine is an exception to the general rule that a plaintiff must have a special interest in the outcome of litigation different from that of the general public. *Id.* at 980. Public standing principles may be applied to permit actions challenging various governmental activities. *Id.* at 982. In determining whether a plaintiff has shown the requisite degree of interest to enable it to maintain an action, courts rely upon the plaintiff's status as a citizen interested in common with other citizens in the execution of the law. *Old Utica Sch. Pres., Inc. v. Utica Twp.*, 7 N.E.3d 327, 331-32 (Ind. Ct. App. 2014), *trans. denied*. Even if public standing requirements are met, a plaintiff's suit is still subject to various limitations, such as the Indiana Public Lawsuit Act or the requirement of exhaustion of administrative remedies. *Cittadine*, 790 N.E.2d at 983.

[25] We are not aware of any case where one governmental entity invoked the public standing doctrine in order to sue another governmental entity. However,

if the public standing requirements are met, it is unclear why this could not occur. In fact, a county arguably is more "public" and would have more incentive to vigorously litigate an issue affecting its citizens than would an individual private citizen. It has been said that, although a state may act as parens patriae on behalf of its citizens, "a county has no sovereign powers and cannot act as parens patriae, asserting the claims of its residents." *Bd. of Comm'rs of Howard Cty. v. Kokomo City Plan Comm'n*, 263 Ind. 282, 295, 330 N.E.2d 92, 101 (1975). However, later cases have found county standing to sue the State or one of its agencies with respect to interpretation of a statute or the constitutionality of a statute. *See Newton Cty.*, 802 N.E.2d at 432-33; *State ex rel. State Bd. of Tax Comm'rs v. Marion Superior Court, Civil Div., Room No. 5*, 271 Ind. 374, 377, 392 N.E.2d 1161, 1164-65 (1979). It is unclear why a county should not also have standing in order to file lawsuits attempting to safeguard the health and welfare of its citizens.

[26] Another standing doctrine that is worth considering is associational standing. This court has adopted the test for associational standing formulated by the United States Supreme Court. That test provides that an "association" has standing to sue on behalf of its members if: "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Save The Valley, Inc. v. Indiana-Kentucky Elec. Corp.*, 820 N.E.2d 677, 679–80 (Ind. Ct. App. 2005) (quoting *Hunt v. Washington State Apple Advertising*

*Comm'n*, 432 U.S. 333, 344, 97 S. Ct. 2434, 2442 (1977)), *aff'd on r'hg, trans. denied*. "'If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 515, 95 S. Ct. 2197, 2213 (1975)). This court also noted that associational standing promotes judicial economy and efficiency by allowing a single lawsuit and plaintiff and to avoid repetitive and costly independent actions. *Id.* at 680 (citing *Connecticut Ass'n of Health Care Facilities v. Worrell*, 508 A.2d 743, 747 (Conn. 1986)).

[27]     *Save The Valley* concerned a challenge by citizens' groups to the granting of a coal ash landfill permit by the State Department of Environmental Management to a power station. Ultimately, this court held the citizens' groups had standing to challenge the granting of the landfill permit. First, the groups' members resided, worked, and recreated in the area affected by the landfill, and those members would be negatively affected by it and its impact on groundwater. *Id.* at 682. Second, the groups' aims were to protect the environment and advance members' interest in energy and utility issues, and the landfill challenge was germane to those purposes. *Id.* Third, the groups were not seeking monetary damages on behalf of any members, which would have required individualized proof, but rather were only challenging the landfill permit's issuance. *Id.*

[28]     *Save the Valley* was concerned specifically with judicial review of an administrative decision, which is not the case here. However, the associational

standing doctrine as formulated by the Supreme Court did not arise in the context of an administrative proceeding and does not seem to necessarily be limited to such proceedings. In the *Hunt* case relied upon by *Save the Valley*, a Washington state agency that represented apple growers challenged the constitutionality of a North Carolina statute regulating apple marketing that was negatively impacting the apple growers. The Supreme Court held that the agency had standing to challenge the statute on behalf of its members, and its status as a state agency did not affect that standing. *Hunt*, 432 U.S. at 344, 97 S. Ct. at 2442. The Supreme Court also noted the "indicia of membership in an organization" the agency possessed, such as that the members elected the agency's directors, only members could serve with the agency, and the members alone financed its activities, including the costs of the lawsuit at issue. *Id.* at 344-45, 97 S. Ct. at 2442. It also was irrelevant that apple growers were required to be members of the agency. *Id.* at 345, 97 S. Ct. at 2442.

[29] The County is not an "association" in the traditional sense, as it is not a private entity. However, that was deemed irrelevant in *Hunt*. County residents also fund the County through taxes and elect County officials. The complaint here alleges that INDOT's roadwork is threatening to cause environmental and health harms to County residents in the form of sewage contamination. Protecting the health, safety, and welfare of its citizens is a central purpose of the County's activities. Also, the County is not seeking monetary damages from INDOT but only injunctive relief, which would benefit multiple citizens and does not require individualized proof. Finally, it would promote judicial

economy and efficiency if the County were allowed to seek remediation of septic field damage and sewage leakage on behalf of multiple parties in one single lawsuit.[3] It is logical to apply associational standing principles to this case.

[30] One final case demonstrating that the County has standing here is *King*, which addressed the City of Gary's lawsuit against gun manufacturers and dealers. The lawsuit sought damages and injunctive relief and made many claims against the manufacturers and dealers, including public nuisance and negligence. One argument made by the defendants in that case was that the City of Gary lacked standing to bring the suit. Our supreme court rejected this claim, stating the City of Gary met the standing requirement because it alleged "it was financially injured through the sale and use of negligently distributed firearms and by alleging a nuisance within its borders caused by the defendants." *King*, 801 N.E.2d at 1248. Here, although the County is not seeking damages, it is alleging that INDOT's activities have caused an environmental or public health risk within its boundaries, which is similar to the City of Gary's claims against the gun manufacturers and dealers.

[31] In sum, we hold that the County has alleged sufficient facts to allow it to have standing to seek injunctive relief against INDOT for negligently-performed

---

[3] To that end, it also would be highly inefficient to follow INDOT's suggestion that the County should first sue the private landowners, demanding that they repair the damaged septic fields on their properties, and that the landowners could then join INDOT in the lawsuit as a third-party defendant and seek damages for the cost of repair to their septic fields. We reject this proposed approach to this case.

roadwork that could cause environmental or public health concerns within the County. Even without considering Parker's affidavit, it is reasonable to infer from the County's complaint that damage to septic fields could negatively impact public health. Any doubts as to whether the County's allegations are sufficiently detailed would be a matter for additional proceedings in this case, not for resolution by a motion to dismiss. *See Trail v. Boys & Girls Clubs of Northwest Indiana*, 845 N.E.2d 130, 135 (Ind. 2006) (stating that complaint must plead operative facts necessary to set forth an actionable claim but need not set out in precise detail the facts upon which the claim is based).[4]

## Conclusion

We have reviewed this case as a Trial Rule 12(B)(6) dismissal of a complaint, not a granting of summary judgment, and accordingly have disregarded Parker's affidavit in considering the merits of the trial court's ruling. We hold that the trial court erred in dismissing the County's action for declaratory judgment and injunctive relief against INDOT and that the County has standing to pursue those claims. We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

---

[4] INDOT has not raised any other possible defenses to the County's lawsuit at this time beyond the question of standing and the propriety of seeking declaratory judgment, and any speculation as to such possible defenses is beyond the scope of this opinion.

Crone, J., and Pyle, J., concur.